# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **RANDY GUTHRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CAUSE NO. 1:11-cv-0209-WTL-MJD** |
| | ) | |
| **TRAVELER'S PROPERTY CASUALTY** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS** the Defendant's motion for the reasons set forth below.

## I. STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). The court "is not required to scour the record in search of evidence to defeat the motion"; rather, the non-moving party must identify with reasonable particularity the evidence upon which it relies. *Id.* Further, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.*

## II. <u>BACKGROUND</u>

This cause concerns whether an insurance policy provides underinsured motorist coverage. The following facts are undisputed.

Defendant Traveler's Property Casualty Company of America ("Traveler's") issued commercial liability primary policy P-810-297X5566-COF-08 (the "Primary Policy") and commercial excess liability policy PSM-CUP-755G6213-TIL-08 (the "Excess Policy") to the insured, Wendy's of Colorado Springs. Both policies have effective dates from July 1, 2008, to July 1, 2009.

The Primary Policy provides commercial automobile liability coverage for vehicles garaged in Colorado, including eighteen private passenger vehicles, thirteen light trucks, four heavy trucks, two extra heavy trucks, and eight trailers. The Primary Policy also provides uninsured/underinsured motorist ("UM/UIM") coverage. The premium for the Primary Policy was calculated based on the number of vehicles insured.

The Excess Policy provides coverage for losses in excess of the limits of specific underlying primary policies, including the Primary Policy, a comprehensive general liability policy, and an employee benefits liability policy. The Excess Policy specifically lists the Primary Policy in its "Schedule of Underlying Insurance." Section XYZ of the Excess Policy provides coverage for "auto hazards." Unlike the premium for the Primary Policy, which was based on the number of insured vehicles, the premium for the Excess Policy is a flat charge.

Section (1)(3)(n) of the Excess Policy specifically excludes UM/UIM coverage: "This insurance does not apply to: . . . (n) . . . Any liability imposed on the insured, or the insured's insurer, under any of the following laws: (1) Uninsured Motorists; (2) Underinsured Motorists;

(3) 'Auto' No-Fault laws or other first party personal injury laws; or (4) Medical Expense Benefits and Income Loss Benefits Laws of any applicable state or jurisdiction."

The Plaintiff-insured, Randy Guthridge, a Colorado resident, was driving a vehicle owned by Wendy's and registered in Colorado when he was involved in a collision with another motorist on February 15, 2009. Following the collision, the other motorist's liability carrier tendered the limits of its policy and Travelers tendered the UIM limits of the Primary Policy to Guthridge. Guthridge now brings this action against Traveler's to recover additional damages from the Excess Policy and Traveler's has moved for summary judgment.

### III. <u>DISCUSSION</u>

In spite of the Excess Policy's exclusionary language, Guthridge argues that the "(umbrella) insurance policy issued by Defendant constitutes an 'automobile liability or motor vehicle liability' policy under Colorado statutory law, and thereby requires a mandatory offering of underinsured motorist coverage with limits equal to the liability limits of the policy."

As a preliminary matter, the parties agree that Colorado law governs Guthridge's claim. This Court can accept such an agreement so long as it is reasonable. *E.g.*, *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 864 (7th Cir. 1999). Indeed, the agreement is reasonable given that (1) both the Primary Policy and the Excess Policy were purchased by the insured, Wendy's, which is domiciled in Colorado, (2) the Primary Policy and the Excess Policy were purchased through an insurance agent located in Colorado, and (3) Plaintiff is a Colorado resident who was driving a vehicle registered in Colorado at the time of the accident. Thus, Colorado law applies.

Colorado law requires insurers to offer UM/UIM coverage with every automobile or

motor vehicle liability policy sold in Colorado. C.R.S. 10-4-609(1)(a).[1] If an insurer fails to offer the required coverage, or if the policy holder does not reject the offered coverage in writing, the policy will be interpreted to include UM/UIM coverage. *Apodaca v. Allstate Insurance Company*, 255 P.3d 1099, 1104 (Colo. 2011) (citing *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 101 (Colo. 1995)). However, the Colorado Supreme Court has held that this statute does not apply to umbrella policies. *Apodaca,* 255 P.3d at 1105.

While Traveler's proceeds on the assumption that the policy at issue is an umbrella policy, Guthridge argues that the Excess Policy is an "automobile liability or motor vehicle liability policy" under the meaning of the Colorado UM/UIM statute[2] because (1) the underlying commercial automobile policy insures a specific fleet of vehicles; (2) the Excess Policy lists the underlying commercial automobile policy in the "Schedule of Underlying Insurance"; and (3) the Excess Policy provides liability coverage for "auto hazards."

The characterization of a policy "is not predicated on the superficial labeling or packaging of a policy;" rather, the plain language of the policy controls. *Id.* at 1107. "[A] policy governed by the UM/UIM statute is one that provides liability coverage for specific, identified automobiles or motor vehicles." *Id.* at 1105. Such policies "are inherently tethered to the

---

[1] Although section 10-4-609(1)(a) refers only to owners or operators of uninsured motor vehicles, subsection (4) explains that uninsured motorist coverage includes underinsured motorist coverage.

[2] Contrary to the Defendant's interpretation, the Court does not read Guthridge's argument as conceding that the Excess Policy is an umbrella policy. The confusion stems from Guthridge's use of the shorthand phrase "(umbrella) policy" at times in his brief. However, because *Apodaca* so clearly forecloses application of the statute to umbrella policies, the Court reads Guthridge to argue that the policy at issue is an "automobile liability or motor vehicle liability policy" under the purview of the Colorado statute.

ownership of a particular motor vehicle and the activity of driving." *Id.*

Guthridge has not set forth any evidence establishing that the policy at issue falls with the purview of the statute. Neither the underlying commercial automobile policy that is referenced in the "Schedule of Underlying Insurance," nor the single provision in the Excess Policy covering "auto hazards" establishes that the Excess Policy is "inherently tethered" to the ownership of specific motor vehicles and the activity of driving. Rather, these provisions simply (1) identify the underlying insurance, and (2) describe the scope of merely one aspect of coverage under the Excess Policy, coverage that also includes commercial general liability and employee benefits liability. Thus, Guthridge has not shown that the policy at issue is an automobile liability or motor vehicle liability policy. As the Excess Policy otherwise excludes underinsured motorist coverage by its terms, Traveler's motion for summary judgment is **GRANTED**.

This holding is further bolstered by undisputed facts produced by Traveler's. Traveler's has shown that (1) the premium for the Excess Policy was a flat charge not based on the number of insured vehicles; and (2) the Excess Policy covers three separate policies, which together provide commercial general liability, employee benefits liability, and automobile liability coverage. This facts render the policy at issue indistinguishable from the umbrella policy at issue in *Apodaca,* which the Colorado Supreme Court held did not constitute an "automobile liability or motor vehicle liability policy." 255 P.3d at 1105. Umbrella policies are not inherently tied to particular motor vehicles or the activity of driving, calculate basic liability premiums without respect to specific aspects of the policyholder's automobiles or their use, and provide a broad "umbrella" of general excess third-party coverage to protect the insured from catastrophic liability coverage should the insured incur legal liability to others. *Id.*

5

## IV. <u>CONCLUSION</u>

Plaintiff Randy Guthridge has failed to establish that the policy at issue is an "automobile liability or motor vehicle liability policy" within the purview of Colorado Statute 10-4-609. The policy at issue otherwise explicitly excludes underinsured motorist coverage. Accordingly, Defendant Travelers' motion for summary judgment is **GRANTED**.

SO ORDERED:   02/17/2012


_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic communication.

6